# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| DANA BOWMAN | § | |
| | § | |
| v. | § | Civil Action No.  4:15-CV-00857 |
| | § | Judge Mazzant |
| RLB INVESTMENT PARTNERS, LLC, | § | |
| LINKS CONSTRUCTION, LLC,  BATES | § | |
| MARTIN ARCHITECTS, LLC | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Dana Bowman's Motion for Partial Summary Judgment as to Defendants RLB Investment Partners, LLC and Links Construction, LLC (Dkt. 28).  After considering the relevant pleadings, the Court finds that the motion should be granted.

## BACKGROUND

Plaintiff Dana Bowman ("Bowman") is a retired Sergeant First Class in the United States Army and was a member of the Army's parachute team, the Golden Knights.  While performing with the Golden Knights, Bowman was involved in a mid-air collision and lost the lower halves of both of his legs.  Bowman has prosthetic legs and uses a wheelchair.

Defendant RLB Investment Partners, LLC ("RLB Investment") is the owner of H Squared Apartments (the "Property") and participated in the design and construction of the Property (Dkt. #5 at p. 2, ¶ 10).  Defendant Links Construction, LLC ("Links Construction") participated in the design and construction of the Property (Dkt. #5 at p. 2, ¶ 11).  The Property is a four story residential building with 44 one–and–two bedroom units.  The Property has common areas including common hallways, trash areas, a pet area, and tenant mailboxes.  All fourty–four units are covered by the Fair Housing Act ("FHA").

Plaintiff visited the Property and was shown an apartment. Plaintiff alleges that he observed numerous accessibility issues in the apartment and common areas that would interfere with the ability of a person in a wheelchair to navigate through the Property. On July 26, 2016, Bowman filed an Amended Complaint alleging that RLB Investment, Links Construction, and Bates Martin Architects, LLC violated the FHA.

After filing the lawsuit, Bowman's expert, Douglas A. Mohnke ("Mohnke") inspected the Property. Mohnke's expert report (the "Mohnke Report") details sixty–seven instances in which conditions in the Property's units did not meet accessibility standards set forth in the FHA, the Department of Housing and Urban Development's ("HUD") Fair Housing Regulations, the HUD Fair Housing Accessibility Guidelines ("HUD Accessibility Guidelines"), the American National Standards Institute Accessible and Usable Buildings and Facilities, A117.2–1986 ("ANSI Standards"), the American with Disabilities Act ("ADA"), or the 1991 ADA Standards for Accessible Design (collectively, the "safe harbors"). For example, several of the units contained wall switches and thermostat controls mounted higher than forty–eight inches above the floor, insufficient clear opening from the hall to the bedroom, insufficient clear opening from the bedroom to the walk–in closets, and insufficient kitchen clear floor space. The Mohnke Report also states that Unit 400 contains insufficient clear opening at the door to the pantry closet. The Mohnke Report further found six conditions in public and common use areas that did not comply with the safe harbors, including lack of an accessible route to the mailbox area and pet litter station and "excessive running slopes and cross-slopes along the ramp and sidewalk on the west side of the building."

RLB Investment and Links Construction retained Kristi Avalos to inspect the Property. Kristi Avalos's expert report (the "Avalos Report") applied the same safe harbors applied in the

Mohnke Report and applied the 2009 International Building Code accessibility standards. The Avalos Report agreed that sixty–six of the sixty–seven unit conditions detailed in the Mohnke Report did not comply with the safe harbors and agreed that these conditions required remediation. The Avalos Report only disputed whether the clear opening at the door to the pantry closet in Unit 400 complied with the FHA. Further, the Avalos Report agreed that five of the six conditions in the common areas did not comply with the safe harbors. The Avalos Report only disputed whether the ramp on the west side of the building is considered part of an accessible route.

On September 1, 2016, Bowman filed the pending Motion for Partial Summary Judgment (Dkt. #28). On September 22, 2016, RLB Investment and Links Construction responded (Dkt. #35). Bowman filed a reply on October 5, 2016 (Dkt. #39). RLB Investment and Links Construction filed a sur-reply on October 19, 2016 (Dkt. #47).

## LEGAL STANDARD

*Summary Judgment Standard*

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey*

*Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor . . . unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Comput. Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). Rather, the Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all of the evidence, but must refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

*The Fair Housing Amendments Act of 1988*

The Fair Housing Amendments Act of 1988 ("FHAA") amended the FHA to make it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). In addition, Section 3604(f)(2) makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." *Id. at* § 3604(f)(2). Discrimination is defined to include a failure to design and construct covered multifamily dwellings in such a manner that:

> (i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
> (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and
> (iii) all premises within such dwellings contain the following features of adaptive design:
>> (I) an accessible route into and through the dwelling;
>> (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;
>> (III) reinforcements in bathroom walls to allow later installation of grab bars; and
>> (IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

*Id. at* § 3604(f)(3)(C). The FHAA further provides that compliance with the appropriate ANSI Standards "suffices to satisfy the requirements of paragraph (3)(C)(iii)." *Id. at* § 3604(f)(4). Congress further granted the Secretary of HUD the authority to promulgate regulations to implement the FHAA and provide technical assistance to help achieve the Act's accessibility requirements. *Id. at* §§ 3601, 3604(f)(5)(C). HUD issued implementing regulations in 1989, which discussed the FHAA's design and construction requirements. 24 C.F.R. § 100.200. HUD issued the HUD Accessibility Guidelines setting minimum standards for compliance with the

design and construction requirements two years later. 56 FR 9472–01. Additionally, HUD recognizes ten safe harbors for compliance with the FHAA's design and construction requirements, including the HUD Accessibility Guidelines, the ANSI Standards, and the 2006 International Building Code. 24 C.F.R. § 100.205(e)(1).

The HUD Accessibility Guidelines are not mandatory and "do not prescribe specific requirements which must be met, and which, if not met, would constitute unlawful discrimination under the Fair Housing Amendments Act. Builders and developers may choose to depart from the [HUD Accessibility] Guidelines, and seek alternate ways to demonstrate that they have met the requirements of the Fair Housing Act." 56 FR 9472–01. "However, if defendants do not comply with the specifications within the [HUD Accessibility] Guidelines, they still bear the burden of proving that they nonetheless have not violated the Act." *United States v. Shanrie Co.*, No. 05-CV-306-DRH, 2007 WL 980418, at *11 (S.D. Ill. Mar. 30, 2007). A defendant's failure to comply with any recognized accessibility standard is sufficient to establish liability under the FHAA. *See United States v. Hallmark Homes, Inc.*, No. CV01-432-N-EJL, 2003 WL 23219807, at *8 (D. Idaho Sept. 29, 2003). *See also United States v. Tanski*, No. 1:04-CV-714, 2007 WL 1017020, at *14 (N.D.N.Y. Mar. 30, 2007) (holding that Section 3604(f)(3)(C) "requires compliance with an objective accessibility standard broadly applicable to handicapped people" and "wholly subjective declarations are not probative on the question of whether the apartments are designed and constructed" in compliance with the FHAA); *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 210 F. App'x 469, 482 (6th Cir. 2006) (holding that defendant failed to demonstrate compliance with the FHAA by means other than those set forth by the applicable HUD guidelines).

Summary judgment as to liability is further appropriate where a defendant admits to the alleged violations. *See Equal Rights Ctr. v. Equity Residential*, No. CCB-06-1060, 2016 WL 1258418, at *13 (D. Md. Mar. 31, 2016) (granting summary judgment as to liability where defendant's expert conceded that certain apartment features fell outside any recognized safe harbor); *Tanski*, 2007 WL 1017020 at *14 (plaintiff established that defendant violated Section 3604(f)(3)(C) as a matter of law where defendants did not dispute the accuracy of the plaintiff's measurements or contend the apartments complied with any objective accessibility standards); *Hallmark Homes*, 2003 WL 23219807 at *8.

## ANALYSIS

Bowman's motion for summary judgment asserts that the design and construction of the Property violates the FHA and that RLB Investment and Links Construction are liable for the violations. Bowman is seeking summary judgment on the issue of liability only. RLB Investment and Links Construction correctly assert that failure to comply with the HUD Guidelines or other FHA safe harbors does not alone equate to liability under the FHA. However, RLB Investment and Links Construction do not assert that the Property complies with any recognized, objective accessibility standard. *See Shanrie Co.*, 2007 WL 980418 at *11; *Hallmark Homes*, 2003 WL 23219807 at *8. RLB Investment and Links Construction contend that the Property only nominally deviates from the safe harbors. These wholly subjective declarations do not create an issue of material fact regarding whether the Property was designed and constructed in compliance with the FHA. *See  Tanski*, 2007 WL 1017020 at *14; . *Vill. of Olde St. Andrews, Inc.*, 210 F. App'x at 482.

Further, the Avalos Report only contests two of the seventy–three violations identified by the Mohnke Report and otherwise agrees that the conditions at the Property require remediation.

7

Summary judgment as to the uncontested violations is therefore appropriate. *See Equal Rights Ctr*, 2016 WL 1258418 at *13; *Tanski*, 2007 WL 1017020 at *14; *Hallmark Homes*, 2003 WL 23219807 at *8.

## CONCLUSION

It is therefore ORDERED that Bowman's Motion for Partial Summary Judgment as to Defendants RLB Investment Partners, LLC and Links Construction, LLC as to liability is hereby **GRANTED**.

Bowman further requests that the Court require RLB Investment and Links Construction to submit a detailed remedial plan with appropriate timetables identifying how they will remedy the above described FHA violations. RLB Investment and Links Construction agree to participate in the drafting of a remedial plan. It is therefore **ORDERED** that RLB Investment and Links Construction shall submit to the Court a remedial plan within forty–five days of the date of this order.

**SIGNED this 16th day of December, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE